IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 20, 2003 Session

STATE OF TENNESSEE, DEPARTMENT OF
CHILDREN'S SERVICES v. K.G., ET AL.
In re: K.L.H.

Appeal from the Juvenile Court for Hamilton County
No. 177,892    Suzanne Bailey, Judge

FILED DECEMBER 12, 2003

No. E2003-00437-COA-R3-PT

---

The State of Tennessee, Department of Children's Services ("DCS") filed a petition seeking to terminate the parental rights of K.G. ("Mother"), and F.L.H., Jr. ("Father"), the biological parents of the minor child, K.L.H. ("the Child"). The Trial Court granted DCS' petition to terminate first Father's, and later Mother's, parental rights. Mother appeals. We vacate the order terminating Mother's parental rights and remand for a new termination decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated;
Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Cara C. Welsh, Chattanooga, Tennessee, for the Appellant, K.G.

Paul G. Summers and Elizabeth C. Driver, Nashville, Tennessee, for the Appellee, State of Tennessee, Department of Children's Services.

**OPINION**

**Background**

This matter involves the termination of Mother's parental rights to the Child. Father does not appeal the decision terminating his parental rights. We will confine our discussion to those facts relevant to the issues on appeal regarding the termination of Mother's parental rights.

In July of 2001, Mother took the Child to the emergency room claiming that the Child had fallen approximately two feet off a bed onto a concrete floor. At that time, the Child was approximately nine months old. Mother and Father both claimed they were the only persons in the house with the Child when she fell. X-rays revealed bilateral parietal skull fractures. According to the medical experts, Mother's explanation for the injuries was incompatible with the physical findings and medical evidence. DCS was notified and removed the Child from her parent's custody. The Child was placed initially with her maternal grandmother, but the grandmother later requested that the Child be moved for the Child's safety. The Child then was placed with foster parents.

Mother filed an affidavit of indigency and was appointed counsel. Mother waived the preliminary hearing and the Trial Court entered an order on September 18, 2001, finding, *inter alia*, the Child to be "dependent and neglected within the meaning of the law and the victim of severe abuse . . . ." The matter was set for adjudication on September 27, 2001. Evidence in the record shows that Mother also was abused physically by Father.

Prior to the adjudicatory hearing on September 27, 2001, Mother's counsel filed a motion to withdraw. The referee ordered counsel to remain on the case until the completion of this hearing. At the end of this hearing, counsel was granted leave to withdraw and the referee immediately appointed a new attorney to represent Mother. The order appointing Mother's new attorney was entered on September 27, 2001, the same day as the hearing. The referee's report of his findings and recommendations from the September 27th hearing was entered on October 8, 2001. These findings and recommendations were not contested by Mother. The Trial Court's order effectively adopting the referee's findings and recommendations was entered on November 5, 2001.

In September of 2002, DCS filed a petition to terminate the parental rights of both Mother and Father. A hearing was held on the petition for termination on January 10, 2003. The Trial Court entered an order, *inter alia*, taking the matter of the termination of Mother's parental rights under advisement and immediately terminating Father's parental rights.

On January 31, 2003, the Department filed a motion for ratification of the permanency plan. This motion was sent to Mother and her attorney, but does not state a date for the hearing. The Trial Court held a hearing on this motion on February 12, 2003, and accepted testimony even though neither Mother nor her attorney were present. Neither Mother nor her attorney were given prior notice of the hearing date. Mother's attorney was notified of the hearing at some point after it began and she made an appearance after the testimony had been taken. Mother's attorney made the Trial Court aware that neither she nor Mother received prior notice of the hearing. On February 28, 2003, the Trial Court entered an order, *inter alia*, terminating Mother's parental rights. Mother appeals to this Court.

## Discussion

Although not stated exactly as such, Mother raises three issues on appeal: 1) whether Mother effectively was denied her right to adequate counsel under Rule 39 of the Tennessee Rules

of Juvenile Procedure and Rule 13 of the Tennessee Supreme Court; 2) whether the Trial Court violated Mother's due process rights by accepting uncontested testimony at an ex parte hearing; and 3) whether clear and convincing evidence supports the Trial Court's finding that the termination of Mother's parental rights would be in the "best interest" of the child as is required by Tenn. Code Ann. § 36-1-113. The State raises an addition issue which we state as: whether clear and convincing evidence supports the Trial Court's finding that sufficient statutory grounds were met to support a termination of Mother's parental rights. We will address each issue as necessary.

The factual findings of the Juvenile Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

It is well established that "parents have a fundamental right to the care, custody, and control of their children. However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988).

Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c) (2003). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson,* 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.,* 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court first must determine that grounds for termination have been established by clear and convincing evidence.

We will begin by considering whether Mother effectively was denied her right to adequate counsel under Rule 39 of the Tennessee Rules of Juvenile Procedure and Rule 13 of the Tennessee Supreme Court. Mother argues that her right to counsel "was seriously hindered by constant changes in counsel at critical times in the process." Mother's brief states:

On the day before the adjudicatory hearing her counsel moved to withdraw and was ordered by the Referee to remain on the case through the adjudicatory hearing. He did so and was immediately relieved at the time of the hearing resulting in [Mother] having no counsel to advise or assist her in an appeal of the extremely prejudicial decision to waive the adjudicatory hearing and accept uncontested a

finding of severe abuse. Thereafter, [Mother] had five different attorneys through the filing of this appeal.

Mother argues that she received only "token" counsel who "offer[ed] little assistance or aid with the complex issues involved in a custody contest with the state."

A review of the record shows that the facts are slightly different than Mother represents. While it is true that Mother was represented by an attorney who moved to withdraw prior to the September 2001, adjudicatory hearing and that the attorney was allowed to withdraw at the end of the adjudicatory hearing, a new attorney was appointed to represent Mother that same day. The findings and recommendations of the referee were signed on October 8, 2001, and the Trial Court's order was entered on November 5, 2001. During the entire time within which to contest the referee's findings and recommendations, Mother was represented by counsel, and Mother did not contest the referee's findings and recommendations.

As for Mother's argument that she was denied her right to adequate counsel because she had multiple attorneys throughout the process, we find this argument unconvincing. Mother was represented by counsel at all relevant times. Nothing in the rules states that a person must be represented by the same attorney throughout the process. In addition, the State points out in its brief, that "[t]here is no evidence that [Mother] attempted to contact her attorney outside of court and was rebuffed or that she was not appropriately represented in court." The State is correct. There is no such evidence in the record. We find Mother's argument that she effectively was denied her right to adequate counsel under Rule 39 of the Tennessee Rules of Juvenile Procedure and Rule 13 of the Tennessee Supreme Court to be both unconvincing and unsupported by the record, and we hold that no error occurred as to this issue.

We next consider whether the Trial Court violated Mother's due process rights by accepting uncontested testimony at an ex parte hearing. Basic due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties" of the claims of the opposing parties. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "The purpose of due process requirements is to notify the individual in advance in order to allow adequate preparation and reduce surprise." *Sanford v. Tennessee Dept. of Env't & Conservation*, 992 S.W.2d 410, 415 (Tenn. Ct. App. 1998).

At the end of the January 10, 2003, termination hearing, the Trial Court took the matter of the termination of Mother's parental rights under advisement. On January 31, 2003, the Department filed a motion for ratification of the permanency plan. The motion was sent to Mother and her attorney, but does not state a date for the hearing. Neither Mother nor her attorney were given prior notice of the hearing date. The Trial Court held a hearing on the motion on February 12, 2003, and accepted testimony despite the fact that neither Mother nor her attorney were present.

Mother's attorney was notified of the hearing at some point after it began and she made an appearance after the testimony had been taken. At the hearing, Mother's attorney made the Trial Court aware that neither she nor Mother were given prior notice of the hearing.

The State asserts that the fact that Mother and her attorney were not present during the entire hearing is mere harmless error. We disagree. The State even asserts that "[Mother] and her attorney had notice that the Department had filed a Motion for Ratification of the Permanency Plan. [But] [a]pparently, neither [Mother] nor her attorney took any further steps to determine when that motion would be heard." This argument attempts to push the responsibility of notice on to the wrong party. The State was required to give adequate notice of when the hearing would be held. The State did not do this. The Trial Court heard ex parte testimony prior to rendering its decision terminating Mother's parental rights. Under these circumstances, we cannot say that this was harmless error or that it was immaterial. Mother had a right to be notified and to be present with her attorney during all these hearings related to the potential termination of her fundamental right to the care, custody, and control of the Child. We are neither willing nor able to assume that the evidence presented to the Trial Court ex parte played no role in the ultimate decision to terminate Mother's parental rights. The State violated Mother's due process rights by failing to notify her in advance of the hearing date so as to allow Mother and her attorney time to prepare adequately for the hearing and to attend the hearing. We, therefore, vacate the Trial Court's order terminating Mother's parental rights and remand this case to the Trial Court for a new termination decision. On remand, the Trial Court may not consider, as to the termination issue, any evidence presented at the February 12, 2003, hearing unless that evidence is properly presented to the Trial Court in a new hearing.

Our decision to vacate the order terminating Mother's parental rights eliminates the necessity of addressing the remaining issues on appeal.

## Conclusion

The judgment of the Trial Court is vacated, and this cause is remanded to the Trial Court for a new termination decision. The costs on appeal are assessed against the Appellee, State of Tennessee, Department of Children's Services.

_____
D. MICHAEL SWINEY, JUDGE